■ In the Matter of MIRACLE PUB, INC., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. [619 NYS2d 751] —Proceeding pursuant to CPLR article 78 to review a determination of the respondent New York State Liquor Authority, dated June 28, 1993, which, after a hearing, canceled the petitioner's on-premises liquor license.

Adjudged that the petition is granted, on the law, to the extent that the penalty imposed is deleted; as so modified, the

determination is confirmed, without costs or disbursements, the proceeding is otherwise dismissed, and the matter is remitted to the respondent for the imposition of a new penalty not to exceed a 90-day suspension and a $10,000 fine.

In April 1982 the petitioner, a corporation, obtained an on-premises liquor license to operate a tavern in North Bellmore. The license was renewed periodically, and the petitioner had an unblemished record until May 23, 1991, when its president, Lloyd Krosser, was stopped for a traffic infraction and was found to be in possession of several packets of cocaine and marihuana. Krosser subsequently pleaded guilty to criminal possession of a controlled substance in the fourth degree. On May 14, 1992, Krosser was sentenced to shock probation (30 days in the county jail and four years and 11 months probation), was ordered to pay a $150 surcharge, and was granted a limited certificate of relief from disabilities permitting him "to hold a New York State License issued by the State Liquor Authority". Acknowledging that he was suffering from a personal drug abuse problem, Krosser entered an outpatient therapy program, which he attended regularly for a year and a half until he was "successfully terminated" on February 1, 1993, with commendations from both his therapist and his probation officer.

On June 18, 1992, the respondent started an administrative proceeding against the petitioner, and a hearing was commenced on February 4, 1993. At the conclusion of the hearing, the Administrative Law Judge (hereinafter the ALJ) sustained the charge of "improper conduct" (9 NYCRR 53.1 [n]), without recommending a penalty. The five members of the respondent adopted the ALJ's findings but split on the appropriate sanction, with three members voting to cancel the petitioner's license, and the remaining two voting instead for a 60-day suspension plus forfeiture of a $1,000 bond.

Under the circumstances of this case we find that the penalty of license cancellation is "so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct," and is therefore shocking to one's sense of fairness (Matter of Pell v Board of Educ., 34 NY2d 222, 234; see also, Matter of Georgian Motel Corp. v New York State Liq. Auth., 184 AD2d 853; Edto Foods v New York State Liq. Auth., 113 AD2d 787). In arriving at this conclusion, we note that the record supports only the conclusion that Krosser suffered at one period of his life from a personal substance abuse problem, of which he rid himself by dint of sincere efforts at rehabilitation.

Although our dissenting colleague suggests that the facts in *Matter of 17 Cameron St. Rest. Corp. v New York State Liq. Auth.* (48 NY2d 509, 513)—where the penalty of cancellation was deemed not to be "shocking to one's sense of fairness"—are indistinguishable from those at bar, we note that the licensee's coprincipal in that case was convicted of the felonious *sale* of illegal drugs, and apparently (although it is not altogether clear from the opinion) the sale was from the licensed premises. In reinstating the severe penalty, the Court of Appeals expressly noted that "[t]rafficking in narcotics is a serious national problem and the authority, in imposing the sanctions, took cognizance of this fact" *(Matter of 17 Cameron St. Rest. Corp. v New York State Liq. Auth., supra,* at 513). No such policy concern is implicated in the case at bar.

We therefore remit the matter to the respondent for reconsideration of the appropriate penalty to be imposed, not to exceed a 90-day suspension and a $10,000 fine, which, we conclude, is the maximum penalty that the record will sustain *(see, Rob Tess Rest. Corp. v New York State Liq. Auth.,* 49 NY2d 874, 876; *Edto Foods v New York State Liq. Auth., supra).* Copertino, Friedmann and Florio, JJ., concur.

Ritter, J. P., dissents and votes to confirm the determination in its entirety, with the following memorandum: My colleagues and I agree that there is substantial evidence in the record establishing the petitioner's misconduct in violation of the respondent's regulations. The fact that the petitioner's president received a certificate of relief from disabilities with regard to the subject unlawful narcotics conviction does not preclude the imposition of a disciplinary sanction in the exercise of the respondent's discretion *(see, Matter of Pulaski Inn [New York State Liq. Auth.],* 182 AD2d 1116, 1117; Correction Law § 701 [3]).

I disagree, however, with my colleagues' conclusion that the penalty of cancellation imposed by the respondent is excessive. The role of the courts in reviewing penalties imposed by the respondent or any other administrative agency is extremely limited. In *Matter of 17 Cameron St. Rest. Corp. v New York State Liq. Auth.* (48 NY2d 509, 513), on facts similar to those at bar, the Court of Appeals held that the penalty of cancellation was not "shocking to one's sense of fairness" and therefore, the respondent's action had to be sustained by the courts as a proper exercise of its discretion. I find no basis on the record at bar to distinguish this case. I note that the petitioner never offered mitigating evidence on the issue of the penalty during the administrative proceedings. The claim that

Mr. Krosser had successfully completed a drug treatment program and evidence about the financial impact of cancellation on his livelihood was never presented to the respondent, and should not be considered by this Court in the first instance. I therefore dissent with respect to the disposition of the penalty issue.